UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

CATHI SCHLOSS,
    Plaintiff,

-vs-

GOSMITH, INC.,
FRIEND TRUSTED INC.,
BRENTON MARRELLI,
DARWIN WIDJAJA,
MATTHEW EHRLICHMAN, and
CHRIS LARSON,
    Defendants.

Case No.
Hon.
**JURY DEMAND**

## COMPLAINT & JURY DEMAND

*Cathi Schloss states the following claims for relief:*

### Jurisdiction

1. This court has jurisdiction under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and 28 U.S.C. §§1331,1337.

2. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3. The Plaintiff to this lawsuit is Cathi Schloss ("Ms. Schloss") who resides in

Eastpointe, MI 48021.

4. The Defendants to this lawsuit are as follows:

   a. GoSmith, Inc. ("GoSmith") is a Delaware corporation with a registered presence in multiple states, including California. GoSmith's principal place of business is 1370 Willow Road, Menlo Park, CA 94025.

   b. Friend Trusted Inc. ("Friend") is a Delaware corporation with a registered presence in multiple states, including California. Friend's principal place of business is 1370 Willow Road, Menlo Park, CA 94025.

   c. Brenton Marrelli ("Mr. Marrelli") is a co-founder and/or officer of Friend Trusted, Inc. and/or GoSmith, Inc.

   d. Darwin Widjaja ("Mr. Widjaja") is a co-founder and/or officer of Friend Trusted, Inc. and/or GoSmith, Inc.

   e. Matthew Ehrlichman ("Mr. Ehrlichman") is a co-founder and/or officer of Friend Trusted, Inc. and/or GoSmith, Inc.

   f. Chris Larson ("Mr. Larson") is a co-founder and/or officer of Friend Trusted, Inc. and/or GoSmith, Inc.

## Venue

5. The transactions and occurrences which give rise to this action occurred in

Macomb County, Michigan.

6. Venue is proper in the Eastern District of Michigan as the conduct and events giving rise to Plaintiff's claims arose in substantial part in this District.

7. Defendants sent multiple unsolicited text messages to Plaintiff in Michigan on her cell phone with a Michigan area code.

8. Defendants' messages to Plaintiff were to solicit contractor bids from Plaintiff for available contractor jobs in Michigan, jobs marketed from areas including like Detroit, Grosse Pointe Shores, Troy, Bloomfield Hills, Southgate, Sterling Heights, and Utica - all Michigan cities.

## Introduction

**9.** GoSmith, Inc. and/or Friend Trusted Inc. is engaged in an especially invasive form of advertising available contractor-type assignments: the transmission of unauthorized contractor-assignments, in the form of "text message" calls ("wireless spam") to the cellular telephones of consumers.

10. Upon information and belief, Friend has transacted business as GoSmith and/or Smith for a period of several years.

11. This PRSNewswire.com's article, including comments from Brenton Marrelli, announced to the world that, "Brenton Marrelli and Darwin Widjaja, the founds of Smith, are pleased to announce the official re-branding of their app that

targets the $130 billion home improvement industry. As Brenton explained, the company was founded as Friend Trusted two and a half years ago and has helped homeowners with over 22,000 projects nationwide totaling over $78 million. Following this success, the company partnered with prominent agency Red Antler to establish a new brand. Friend Trust is now Smith, a brand that reflects the simplicity and craftsmanship of the product." (Exhibit 2 - *PRSNewswire.com - Friend Trusted rebranded Smith and GoSmith.com*).

12. The PRSNewswire press release goes on to direct consumers seeking more information to the company website, www.GoSmith.com. (Exhibit 2 - *PRSNewswire.com - Friend Trusted rebranded Smith and GoSmith.com*).

13. The PRSNewswire press release provided the following contact information: Brenton Marrelli, Brenton@gosmith.com, 1(855) 878-7850. (Exhibit 2 - *PRSNewswire.com - Friend Trusted rebranded Smith and GoSmith.com*).

14. Friend's website, www.FriendTrusted.com routes to www.gosmith.com (Exhibit 3 - *Laura Branco Declaration*).

15. GoSmith operates the website www.gosmith.com.

16. The GoSmith website contact us page informs the public that Brenton Marrelli is the CEO of GoSmith.com. (Exhibit 4 – *GoSmith Contact Us*).

17. An internet search through the Google search engine (www.google.com) of

"friend trusted inc" nets the first result of www.gosmith.com website. (Exhibit 3 – *Laura Branco Declaration*; Exhibit 5 – *Friend Trusted Inc - Google Search*).

18. Text messages to cellular devices can be intrusive, costly and are in violation of the Telephone Consumer Protection Act ("TCPA"), as noted in the Federal Communications Commission Consumer Bulletin on "Avoiding Spam: Unwanted Email and Text Messages" (Exhibit 6 – *Avoiding Spam: Unwanted Email and Text Messages*).

19. Consumers have filed both individual and class action lawsuits against GoSmith and Friend Trusted in multiple jurisdictions for similar TCPA violations. (Exhibit 17 – *PACER Query GoSmith;* Exhibit 18 – *PACER Query Friend Trusted*).

20. Plaintiff Cathi Schloss brings this complaint against GoSmith and Friend Trusted along with their officers, Mr. Marrelli, Mr. Widjaja, Mr. Ehrlichman, and Mr. Larson, to halt Defendants' practice of making unsolicited text message calls to her cellular telephone and to obtain redress for her injuries by their conduct.

21. By making the text message calls at issue in this complaint, Defendants caused Ms. Schloss actual harm, including the aggravation and nuisance that

necessarily accompanies the receipt of unsolicited text message calls, and the monies paid to her wireless carrier for the receipt of such text message calls.

22. In response to Defendants' unlawful conduct, Plaintiff files this lawsuit and seeks injunction requiring Defendants to cease all unsolicited text message calling activities and an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## **Common Facts**

23. In recent years, businesses have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

24. One of the newest forms of such bulk marketing is to advertise through Short Message Services or SMS. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

25. A text message is a "call" within the meaning of the TCPA. *Satterfield v Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

26. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because cell phone users must pay their wifeless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether

the message is authorized.

27. Defendants operate an online platform that allows consumers to connect with and solicit quotes for trades and services from contractors, trades men, special trades and the like. (Exhibit 7 – *GoSmith Terms of Service*).

28. Defendants market a service that connects individual homeowners with businesses that provide home improvement, home repair, landscaping, cleaning and other related services.

29. Defendants own and operate www.gosmith.com and other websites and own and/or operate mobile applications by "Smith" or its affiliates, including "Smith Property." (Exhibit 7 – *GoSmith Terms of Service*).

30. Defendants communicate with consumers and tradesmen and home-repair service providers via telephone, text messages, email and other methods of communications. (Exhibit 7 – *GoSmith Terms of Service*).

31. Defendants rely on referrals to contractors and skilled tradesmen to produce profits for its business.

32. Defendants market to contractors that if they purchase credits, they will receive a "guaranteed connection" with a homeowner.

33. Defendants advertise that its free to receive leads and quotes online, but for each appointment set, Defendants assign a credit value depending on the job

size . (Exhibit 8 – *GoSmith Frequently Asked Questions_Referral Service*).

34. Defendants assign a credit value for appointments on a scale of 1 to 8, with 8 being allocated towards larger jobs and one for smaller jobs.

35. Defendants charge $8.00 per appointment credit, so a small job setting an appointment would be one credit, and would then cost $8.00; a large job might require eight credits for an appointment, which would cost the service provider $64.00.  (Exhibit 8 – *GoSmith Frequently Asked Questions_Referral Service*; Exhibit 9 – *Appointment Credits Schedule*).

36. Brenton Marrelli created, authorized and/or implemented GoSmith's and/or Friend Trusted's marketing campaigns, including their use of text messaging to solicit quotes for trades and services from service professionals.

37. Darwin Widjaja created, authorized and/or implemented GoSmith's and/or Friend Trusted's marketing campaigns, including their use of text messaging to solicit quotes for trades and services from service professionals.

38. Matthew Ehrlichman created, authorized and/or implemented GoSmith's and/or Friend Trusted's marketing campaigns, including their use of text messaging to solicit quotes for trades and services from service professionals.

39. Chris Larson created, authorized and/or implemented GoSmith's and/or Friend Trusted's marketing campaigns, including their use of text messaging to solicit

quotes for trades and services from service professionals.

40. On GoSmith's website, under frequently asked questions, "Where does Smith's homeowner come from," GoSmith provides the following:

> **Homeowner requests originate from a variety of sources including our Apps (both on Apple & Google), SEO, Google, Facebook, online classifieds and searches, as well as Partner referral services.**
> (Exhibit 10 - *GoSmith Frequently Asked Questions_Sources*).

41. To the question, "Will I always be alerted when new jobs become available," GoSmith provides the following:

> **Whenever Smith matches you to a job, we'll notify you by email and/or text message about the opportunity to review the job and quote a price.**
> (Exhibit 11 - *GoSmith Frequently Asked Questions_Getting Started 3*).

42. To the question, "How does Smith help me win more jobs?", GoSmith provides the following:

> When you provide an online quote to a homeowner, *our automated system will periodically follow-up with the homeowner* to make sure they view your estimate and proactively ask if they have any questions regarding your quote or company info. *The automated follow-up happens periodically* (after 3 days, 7 days and 14 days) and is a complimentary feature that we offer to help you win more jobs. To maximize your chances of success, we strongly recommend boosting your profile by uploading project photos, happy customer testimonials and completing all areas of your free online profile.
> (Exhibit 12 - *GoSmith Frequently Asked Questions_Tips for Success*).

## **SPECIFIC ALLEGATIONS**

43. On or about October 1, 2015, Defendants began sending unsolicited text

messages to Ms. Schloss's cellular telephone.

44. Ms. Schloss's cellular phone number has been registered with the National Do Not Call Registry since December 11, 2004.

45. Defendants made, or had made on their behalf text message calls to Plaintiff from the Short Code Phone Number 76484. (Exhibit 13 – *Smith SMS Short Code - 76484 - U.S.*; Exhibit 14 - *GoSmith Frequently Asked Questions_Troubleshooting*).

46. The return phone number included in the body of the texts were from numbers (682) 233-2691, (650) 695-4677, (346) 900-9247, (650) 288-5682, (248) 897-3269, (415) 231-4513, (650) 339-3624, (669) 207-6208, (408) 510-9433, (415) 418-0403, (646) 860-8879, (415) 265-9518, (303) 870-7889, among others.

47. The body of these text messages caused to be sent by Defendants include the following:

Larry is requesting landscaper in Utica. You have 1st priority. Reply 1 if interested, 3 if not. (March 19, 2017, 2:34pm)

Hi, a homeowner in Detroit wants to get a quote for boilers. You have 1st priority. Reply 1 if interested, 3 if not. (March 19, 2017, 9:42am)

Hi, a homeowner in Sterling Heights is looking for an estimate for landscaper. Reply 1 if yes, 2 if not for you. (February 17, 2017, 12:55pm)

Hello, this is Thomas, i will like to confirm if you do Heating & Air-condition installation? (February 15, 2017, 5:45pm)

Hi this is, John Scott. is this an air condition company? (February 15, 2017, 7:36pm)

Jayner is wanting to get heating & cooling installation in Detroit. Text 1 if interested, 2 if not for you. (February 7, 2017, 4:31pm)

Sam is in need of landscaper in Grosse Pointe Shores. Text 1 if interested, 2 if not for you. (January 17, 2017, 10:24pm)

Jasmine is requesting heating & cooling installation in Detroit. Text 1 if interested, 2 if not for you. (January 17, 2017, 10:33pm)

Charles is looking for heating & cooling installation in Bloomfield Hills. Text 1 if interested, 2 if not for you. (January 14, 2017, 8:25am)

Seeking an estimate for heating & cooling installation. Text 1 if interested, 2 if not for you. (January 8, 2017, 3:06pm)

Stephanie is inquiring about heating & cooling installation in Southgate. Text 1 if interested, 2 if not for you. (January 4, 2017, 9:12pm)

Seeking an estimate for boilers. Text 1 if interested, 2 if not for you. (January 4, 2017, 3:56pm)

Rozy is inquiring about heating & cooling installation in Troy. Text 1 if interested, 2 if not for you. (December 31, 2016, 7:59am)

Seeking estimate for landscaper. Text 1 if interested, 2 if not for you. (November 30, 2016, 10:21am)

48. Defendants either made the text message calls to Plaintiff's cellular phone using an automated telephone dialing system, or contracted with another entity to make the calls using an automatic telephone dialing system.

49. Defendants made, or had made on their behalf, the text message calls to

Plaintiff's cellular phone using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

50. Defendants each were aware that the above described text messages and those similar to them were being made either by them directly, or made on their behalf.

51. Benton Marrelli is personally liable for each violation of the TCPA as he is the GoSmith and/or Friend Trusted official who created, authorized and/or implemented the text messaging program at issue and responsible for GoSmith's and/or Friend Trusted's policies, procedures, and practices which resulted in the violations of the TCPA set forth herein.  47 U.S.C. § 217.

52. Darwin Widjaja is personally liable for each violation of the TCPA as he is the GoSmith and/or Friend Trusted official who created, authorized and/or implemented the text messaging program at issue and responsible for GoSmith's and/or Friend Trusted's policies, procedures, and practices which resulted in the violations of the TCPA set forth herein.  47 U.S.C. § 217.

53. Matthew Ehrlichman is personally liable for each violation of the TCPA as he is the GoSmith and/or Friend Trusted official who created, authorized and/or implemented the text messaging program at issue and responsible for

GoSmith's and/or Friend Trusted's policies, procedures, and practices which resulted in the violations of the TCPA set forth herein. 47 U.S.C. § 217.

54. Chris Larson is personally liable for each violation of the TCPA as he is the GoSmith and/or Friend Trusted official who created, authorized and/or implemented the text messaging program at issue and responsible for GoSmith's and/or Friend Trusted's policies, procedures, and practices which resulted in the violations of the TCPA set forth herein. 47 U.S.C. § 217.

55. Ms. Schloss has not previously sought out or requested Defendant's services. Further, Ms. Schloss has not transacted any business with Defendants, nor provided authorization for Defendant to contact her in any way, including via automated telephone call or text messages.

56. Ms. Schloss has not and does not have a GoSmith and/or Friend Trusted profile or account.

57. Ms. Schloss has not registered or requested these text messages to be delivered to her cellular phone by Defendants.

58. Ms. Schloss was not informed, and does not know why she started receiving these text messages from or on behalf of or through the service of Defendants to her cellular phone.

59. Ms. Schloss has attempted to stop the text messages by replying to the text

messages with the number "2" indicating her disinterest. By sending such reply, Ms. Schloss indicated that she did not expressly consent to Defendants sending her these text messages and expressly revoked any alleged consent.

60. Despite Ms. Schloss's express request that the text messages stop, Defendants have not stopped sending her unsolicited text messages.

61. Ms. Schloss has received unwanted and unsolicited text messages to her cellular phone from Defendants on a near daily basis because Defendants wished to market their services for their own benefit.

62. Ms. Schloss has received over 100 unwanted and unsolicited text messages from Defendants to her cellular phone which were dispatched or caused to be dispatched by Defendants or those acting on behalf of Defendants through the use of an Autodialer.

63. Ms. Schloss has been receiving these text messages from Defendants or on behalf of Defendants since at least October 1, 2015.

64. These text messages have been unwanted, annoying an invasion of privacy.

65. These text messages fill up the available storage space on Ms. Schloss's device, having the effect of forcing her to routinely delete these unwanted text messages or lose the ability to store personal items that she wants to store such as photos, notes, video's and other personal items of the like.

66. Ms. Schloss continues to receive numerous and unsolicited text messages on her personal cellular phone from Defendants.

67. Ms. Schloss has attempted to stop these text messages, but her attempts to date have been unsuccessful and there is not an easily available option to request that Defendants stop sending these text messages.

68. As technology has advanced, numerous courts have applied the TCPA to unsolicited text messages sent to consumers' cell phones.

69. Consumers, like Ms. Schloss, do not have control to stop unsolicited unwanted text messages to their cell phones. (Exhibit 15 – *Consumers complaining of unwanted and unsolicited text messages from GoSmith*; Exhibit 16 – *TruckMountForums.com - Is anyone getting work from GoSmith.com*).

### COUNT I: Violation of the TCPA, 47 U.S.C. § 227 *et seq.* (All Defendants)

70. Ms. Schloss incorporates by reference the foregoing allegations as if fully set forth herein.

71. Ms. Schloss maintains a cell phone in order to maintain personal contacts with family, friends, and as a device through which she can seek emergency help.

72. The service for her cell phone is via a "cellular telephone service" as described in 47 U.S.C. § 227(b)(1)(A)(iii).

73. Defendants and their agents made unsolicited text message calls to Plaintiffs

cellular phone without her prior express consent.

74. Defendants and their agents made unsolicited text message calls to Plaintiffs cellular phone after she asked them to stop.

75. Defendants made the text message calls, or had them made on their behalf, using an automatic telephone dialing system within the meaning of the TCPA.

76. Defendants and their agents utilized equipment that made, or had made on their behalf, the text message calls to Ms. Schloss simultaneously and without human intervention.

77. By making, or having made on their behalf, the unsolicited text message calls to Ms. Schloss, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' unlawful conduct, Ms. Schloss suffered actual damages in the form of monies paid to receive the unsolicited text message calls on her cellular phone and under section 227(b)(3)(B) she is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

78. Alternatively, Defendants have knowingly or wilfully violated the TCPA in relation to Ms. Schloss.

79. Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Ms. Schloss to $1,500 per call in violation of the

statute.

## Demand for Jury Trial

80. Ms. Schloss requests a trial by jury of all claims that can be so tried.

## Demand For Judgment for Relief

81. *Accordingly, Ms. Schloss requests that the Court grant:*

   *a.     An award of actual and statutory damages;*

   *b.     An injunction requiring Defendants to cease all unsolicited text message calls, and otherwise protect the interests of Ms. Schloss;*

   *c.     An award of reasonable attorneys' fees and costs;*

   *d.     Treble damages; and*

   *e.     Any other relief deemed proper by this Court.*

                                        Respectfully Submitted,


                                        By:  s/ Sylvia Bolos
                                        Sylvia Bolos (P78715)
                                        LYNGKLIP & ASSOCIATES
                                        CONSUMER LAW CENTER, PLC
                                        Attorney For Cathi Schloss
                                        24500 Northwestern Highway, Ste. 206
                                        Southfield, MI 48075
                                        (248) 208-8864
                                        SylviaB@MichiganConsumerLaw.com

Dated: August 25, 2017